UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CYNTHIA F.[1], | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 2:20-cv-191 |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Cynthia F., on May 7, 2020. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Cynthia F., filed an application for Supplemental Security Income on November 7, 2016, alleging a disability onset date of December 10, 2015. (Tr. 15). The claim was denied initially on April 20, 2017, and upon reconsideration on August 7, 2017. (Tr. 15). On August 29, 2017, Cynthia F. filed a written request for a hearing pursuant to 20 CFR § 404.1429. (Tr. 15). The hearing was held on December 18, 2018, before Administrative Law Judge Charles J. Thorbjorsen. (Tr. 15). Vocational Expert (VE) Kathleen Reis appeared at the hearing. (Tr. 15). On March 5, 2019, the ALJ issued an unfavorable decision. (Tr. 15-26). Cynthia F. filed a request for review by the Appeals Council, which was denied on April 6, 2020. (Tr. 6-11). Cynthia F. then filed this petition for judicial review on May 7, 2020.

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Cynthia F. had not engaged in substantial gainful activity since November 7, 2016, the application date. (Tr. 17).

At step two, the ALJ determined that Cynthia F. had the following severe impairments: chronic pain syndrome; right shoulder bursitis; cervical degenerative disc disease with radiculopathy; lumbar degenerative disc disease; Raynaud's phenomenon; major depressive disorder; anxiety disorder; and post-traumatic stress disorder. (Tr. 17). The ALJ found that Cynthia F.'s severe impairments significantly limited her ability to perform basic work activities. (Tr. 17). The ALJ also found that Cynthia F. had the nonsevere impairments of diabetes and hypothyroidism. (Tr. 17).

At step three, the ALJ concluded that Cynthia F. did not have a physical impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ considered whether the severity of Cynthia F.'s mental impairments met or medically equaled the criteria of Listings 12.04, 12.06, or 12.16. (Tr. 18). The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves.

(Tr. 18-19). The ALJ indicated that a marked limitation meant the ability to function independently, appropriately, effectively, and on a sustained basis was seriously limited, while an extreme limitation was the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 19). The ALJ found that Cynthia F. had a moderate limitation in

understanding, remembering, or applying information; a moderate limitation interacting with others; a moderate limitation concentrating, persisting, or maintaining pace; and a moderate limitation adapting or managing herself. (Tr. 19). Because Cynthia F.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria were not satisfied. (Tr. 19).

After consideration of the entire record, the ALJ then assessed Cynthia F.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is able to frequently balance but only occasionally climb ramps or stairs, stoop, kneel, crouch and crawl but never climb ladders, ropes or scaffolds; she is not able to reach overhead with her right upper extremity but she is able to frequently reach in all other directions; she is able to handle and finger frequently with her right upper extremity but she must avoid concentrated exposure to extreme cold and she is not able to work at unprotected heights; she is able to perform simple, routine and repetitive tasks but she must avoid more than occasional, brief and superficial contact with supervisors, co-workers and the public.

(Tr. 20). The ALJ explained that in considering Cynthia F.'s symptoms he followed a two-step process. (Tr. 20). First, he determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Cynthia F.'s pain or other symptoms. (Tr. 20). Then he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Cynthia F.'s functioning. (Tr. 20).

After considering the evidence, the ALJ found that Cynthia F.'s medically determinable impairments reasonably could be expected to cause some of the alleged symptoms. (Tr. 21). However, the ALJ concluded that Cynthia F.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and

3

other evidence in the record. (Tr. 21).

At step four, the ALJ determined that Cynthia F. had been unable to perform any past relevant work. (Tr. 25). Considering Cynthia F.'s age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that she could have performed, including merchandise maker (282,000 jobs nationally), mailing room clerk (99,000 jobs nationally), and housekeeping cleaner (180,000 jobs nationally). (Tr. 25-26). The ALJ found that Cynthia F. was not under a disability within the meaning of the Social Security Act from November 7, 2016 through March 5, 2019, the date of the unfavorable decision. (Tr. 26).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive"); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence"). Courts have defined substantial evidence as such relevant "evidence as a reasonable mind might accept to support such a conclusion." ***Zoch v. Saul***, 2020 WL 6883424, at *3 (7th Cir. Nov. 24, 2020); ***Biestek v. Berryhill***, 139 S. Ct. 1148, 1154 (2019); ***Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."

*Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light

of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** see ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the request of a disability benefits applicant, a vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Cynthia F. has requested that the court remand this matter for additional proceedings, or in the alternative, reverse the ALJ's decision and award benefits. In her appeal, Cynthia F. argues that: (1) the ALJ mischaracterized and cherry-picked the medical evidence; (2) the ALJ failed to give clear and specific reasons for dismissing the opinions of her treating sources; and (3) the ALJ's hypothetical question to the vocational expert failed to account for all of her mental limitations.

Cynthia F. claims that the ALJ erred when he failed to give clear and specific reasons for dismissing the opinions of her treating sources. Specifically, she argues that the ALJ acted contrary to the treating physician rule.

The law distinguishes between treating physicians and non-treating physicians in social security benefit cases. "[A]n ALJ should give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]" because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." ***Scrogham v. Colvin***, 765 F.3d 685, 696 (7th Cir. 2014) (internal quotations omitted); ***Misener v. Astrue***, 926 F.Supp.2d 1016, (N.D. Ind. 2013) (internal citations omitted); see also ***Boiles v. Barnhart***, 395 F.3d 421, 426 (7th Cir. 2005). However, a treating physician's opinion should be given controlling weight only if it

is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." **20 C.F.R. § 416.927(c)(2)**.

When controlling weight is not given, the ALJ is expected to have considered the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the opinion's consistency with the record as a whole, the physician's specialties, and any other relevant factors. **§ 416.927(c)**. In doing so, "an ALJ must articulate, at least minimally, his analysis of the evidence so that [the] court can follow his reasoning." ***Skarbek v. Barnhart***, 390 F.3d 500, 503 (7th Cir. 2004) (citing ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000).

The opinions at issue here are those of treating providers, Dr. Daksha Vyas, M.D., Dr. Pamela Stover, L.C.S.W., and Mary Beth Withcer, N.P. Dr. Vyas opined that Cynthia F. had the following impairments: a reduced range of motion in her right shoulder and right arm; a severe limitation in her ability to deal with work stress; and limitations on sitting and standing during the workday. Cynthia F. could sit for less than one hour and could only stand or walk for less than 15 minutes at one time, but Dr. Vyas did note a cumulative standing or walking limitation for the entire workday. (Tr. 23). Dr. Vyas found that Cynthia F. could frequently reach, handle, and finger with her left hand but only occasionally reach, handle, and finger with her right hand. (Tr. 23). Dr. Vyas opined that Cynthia F. would be absent more than three times a month and that her pain would constantly interfere with her ability to sustain attention and concentration. (Tr. 23, 1300-13). The ALJ gave Dr. Vyas' opinion little weight because:

> "[e]xaminations showed some range of motion limitations in her cervical spine and right shoulder but upper extremity strength was good. She also had some diminished sensation in her right upper extremity but her left upper extremity was normal and there was no evidence of decreased grip strength."

(Tr. 24).

7

Cynthia F. maintains that the ALJ's reasoning was inadequate because he cherry-picked pages 6-25 of Dr. Vyas' 39 page record and ignored Dr. Vyas' treatment notes which included examination findings of reduced strength in the neck, decreased sensory in the right arm from the elbow, abnormal heel to shin test, and abnormal tandem gait test. (Tr. 1248-86, 1362-65). More importantly, Cynthia F. argues, the ALJ's reasoning for dismissing Dr. Vyas' opinions did not include discussion of any of the **§ 404.1527(c)(2)** required factors.

In response, the Commissioner simply restates the ALJ's reasoning for rejecting Dr. Vyas' opinion but also states that while the ALJ did not cite to all of Dr. Vyas' 39-page record, he did cite to more than half. The Commissioner does not dispute that if a treating source opinion does not receive controlling weight, then the ALJ must evaluate all medical opinions, including those of non-examining consultants, in light of the factors and their consistency with the record. However, the Commissioner also cited to **Collins v. Berryhill**, 743 F. App'x 21, 25 (7th Cir. 2018) and claims that the ALJ does not need to discuss and weigh each factor as long as the he minimally articulates his reasoning. As an initial matter, the case the Commissioner cited is a nonprecedential disposition that is not binding on this court. Additionally, the sentence after the one that the Commissioner cited states that the ALJ in that case "satisfied this standard … by considering the length of treatment and frequency of examination." 743 F. App'x at 25. The court agrees that not every factor must be weighed, however, the Commissioner has portrayed the Seventh Circuit's findings incorrectly.

Here, the ALJ's reasoning for rejecting Dr. Vyas' opinion did not, at a minimum, even imply that he considered the **§ 416.927(c)** factors. In fact, he did not provide any explanation as to why he decided to discount Dr. Vyas' opinion that Cynthia F. could only occasionally reach, handle, and finger with her right upper extremity, as well as miss work up to three times each

month. Therefore, the ALJ erred by improperly discounting Dr. Vyas' opinion.

The next treating opinion at issue is Mary Beth Witcher, N.P. Ms. Witcher opined the following:

> Cynthia F. could sit and stand/walk for two hours each during the workday but she was not able to lift any weight and she would need to lie down or rest for a total of four hours during the workday. She could never use her hands to handle, finger, or feel and she would be absent more than three times a month. Her level of pain would frequently interfere with her attention and concentration.

(Tr. 23). The ALJ gave Ms. Witcher's opinion "little weight because [her] treatment notes fail[ed] to support such extreme limitations. (Tr. 230). The ALJ acknowledged that Ms. Witcher's examinations revealed some tenderness in Cynthia F.'s hips and hands but that she was not in acute distress, her gait was normal, and there was no evidence of decreased strength or diminished range of motion. (Tr. 23).

Cynthia F. argues that the ALJ failed to consider the **§ 416.927(c)** factors in his decision to give Ms. Witcher's opinion little weight. Further, she argues that the medical records that the ALJ relied on were from appointments for bronchitis, itching, medication follow-up, and physical therapy evaluation. Additionally, she claims that the ALJ's reliance on Ms. Wicher's statement that Cynthia F. was not in "acute distress" cannot be assumed to mean that she did not experience the pain to the degree that she alleged. Cynthia F. argues that the ALJ's reliance on that finding as means to dismiss Ms. Witcher's opinion was not proper because he offered no explanation.

The Commissioner responded to the argument relating to Ms. Witcher's opinion by stating "these considerations were proper and supported by the evidence. [Cynthia F.'s] arguments to the contrary amount to an invitation for this Court to reweigh the evidence, an invitation this Court should decline." This is the same response the Commissioner gave to

Cynthia F.'s argument as to the final treatment provider, Dr. Pamela Stover, who opined that:

> [Cynthia F.] had a moderate loss in the ability to understand, remember and carry out simple instructions, a moderate loss in her ability to sustain an ordinary routine and be aware of normal hazards, marked loss in her ability to remember work procedures, make simple decisions, accept instructions, get along with co-workers and adapt to changes. She had an extreme loss in her ability to maintain attention/concentration, maintain socially appropriate behavior and respond to changes in the work setting. She would be absent from work more than three times a month.

(Tr. 23).

As to Dr. Stover, the ALJ gave her opinion "little weight" because her "treatment notes fail[ed] to support such extreme limitations." (Tr. 23). The ALJ provided further reasoning for his decision by stating that her thought content was appropriate and goal oriented, her attention span and concentration were normal, and she was able to follow a three-step command and recall three of three objects after five minutes. (Tr. 23). Lastly, the ALJ pointed out that Cynthia F. testified that she could drive and shop for groceries, she was raising two teenage daughters as a single parent, and she could attend basketball games. (Tr. 23).

As with Dr. Vyas' and Ms. Witcher's opinions, the ALJ rejected Dr. Stover's opinion without fulfilling his obligation of considering any of the six **§ 416.927(c)** factors. In fact, just last month, the Seventh Circuit raised the bar by ruling that when "controlling weight" is not given to a treating physician's opinion, the ALJ is expected to provide "'good reasons' for affording it less weight." ***Pavilick***, __ F.3d at __. The ALJ gave little weight to each of the three treating providers without providing careful reasoning for doing so. For example, and most alarmingly, each treatment provider stated that Cynthia F. would miss work more than three times each month due to her mental and physical conditions. The ALJ failed to reconcile this consistent opinion when both dismissing the treating providers' opinions and determining that Cynthia F. was not disabled. Because the ALJ failed to consider the **§ 416.927(c)** factors when

10

he rejected the opinions of Dr. Vyas, Dr. Stover, and Ms. Witcher, remand is necessary.

Cynthia F. makes additional argument regarding the ALJ's mischaracterization of the medical evidence and the hypothetical question posed to the VE. However, since the ALJ erred by failing to consider the **§ 416.927(c)** factors when dismissing the opinions of all three treating physicians, the court need not address the additional arguments at this time. The ALJ will have the opportunity to revisit these other issues on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED.**

ENTERED this 24th day of May, 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge